UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEDRICK LAMAR THOMAS,

                      Petitioner,

                                         CIVIL CASE NO. 04-CV-40196-FL
v.                                     HONORABLE PAUL V. GADOLA

MILLICENT WARREN,

                      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

**I.      Introduction**

Petitioner Dedrick Lamar Thomas, a Michigan prisoner currently confined at the Ryan Correctional Facility in Detroit, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  Petitioner was convicted of two counts of assault with intent to commit murder, assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony following a jury trial in the Saginaw County Circuit Court in 2000.  He was sentenced to concurrent terms of 20 to 40 years imprisonment on the assault with intent to murder convictions, a concurrent term of 7 to 15 years imprisonment on the assault with intent to do great bodily harm convictions, and consecutive terms of two years imprisonment on the firearm

---

[1]At the time he instituted this action, Petitioner was confined at the Thumb Correctional Facility in Lapeer, Michigan where Respondent, Millicent Warren, is the warden.

1

convictions.

In his pleadings, Petitioner raises claims concerning the prosecution's failure to disclose witness statements and investigate alibi witnesses, the validity of a photographic array, the admission of a witness's prior statement, a police witness's reference to Petitioner's photograph, and prosecutorial misconduct. For the reasons stated below, the Court denies the petition for writ of habeas corpus.

## II.    Facts and Procedural History

Petitioner's convictions arise from the drive-by shooting of Todd Jones, Russell McClendon, and McClendon's two-year-old nephew Hulus Givan in Saginaw, Michigan at approximately 2:00 p.m. on March 7, 2000. Todd Jones and Hulus Givan were each struck in the hand, but Russell McClendon was not injured.

At trial, Russell McClendon testified that he was sitting outside in front of his home with Todd Jones and Hulus Givan when they observed a gray Trans Am driven by a light-skinned black male with braided hair and no facial hair. The driver fired five or six shots at them. McClendon identified Petitioner as the shooter and testified that he and Petitioner had been "pretty good friends" in school, although they had little contact since that time. McClendon admitted that he did not initially identify Petitioner as the shooter when speaking with the police, but explained that he had feared for his life. McClendon told the police that he thought the shooter's name was "Dee" two days after the shooting and then identified Petitioner in a photographic array.

Todd Jones gave a similar account of the shooting. Jones also identified Petitioner as the shooter and said that he had previously seen Petitioner in the neighborhood. Jones also identified

2

Petitioner as the shooter in a photographic array two days after the shooting. Jones initially testified that he told a police officer at the hospital that "Dee" was the shooter, but then stated that he could not recall giving a name to the police until after the photographic array. Jones further stated that he had talked about the shooting with his friend Brandon, who confirmed that Petitioner was the shooter.

Police Officer Jeffrey Lickly testified that he responded to the scene and spoke with Todd Jones at the hospital. Lickly stated that Todd Jones gave him a description and told him that the shooter was a black male from the Glenwood Market area who went by the street name "Dee."

Frank Gaskew testified that he was near McClendon's house when the shooting occurred. He claimed that he did not see the shooter and did not recall speaking with the police after the incident. Specifically, he did not recall telling the police "off the record" that Jones and Petitioner had a disagreement and that Petitioner was the shooter. Gaskew's taped statement, which did not include this information, was played for the jury, but did not refresh Gaskew's recollection.

Police Officer Charles Coleman testified that he spoke with Frank Gaskew after the shooting and that Gaskew did not want to get involved. Coleman stated that Gaskew told him "off the record" that Petitioner was the shooter and that the shooting arose from a drug dispute. Coleman testified that he and another officer prepared the photographic array used to identify Petitioner. Coleman acknowledged that Petitioner had facial hair when he was arrested.

Janet Pritchett, McClendon's neighbor, testified that she witnessed the shooting. She described the shooter as a young light-skinned black male with a mark on his cheek, long hair pulled back, and no facial hair. The shooter drove with his left hand and shot with his right hand. After

3

the shooting, she called 911 and tended to Hulus Givan.  She also did a composite with the police, which she admitted did not look like Petitioner.  Nonetheless, she identified Petitioner as the shooter and said that she had "no doubt" that he was the shooter.  Pritchett was shown Petitioner's photograph prior to her testimony and questioned about the mark on his cheek.  She stated that this did not influence her testimony, however, as she had previously seen Petitioner in the courtroom and immediately recognized him as the person who committed the shooting.

Police Officer Robert Ruth testified that he interviewed Petitioner at the time of his arrest and took a statement, which was played for the jury.  He contacted Corey Walton the next day and spoke to him by telephone.  He did not contact the businesses that Walton and Petitioner claimed they were visiting at the time of the shooting until he received an alibi notice a few days before trial.  Ruth admitted showing Janice Pritchett a photograph of Petitioner prior to trial and asking her about the mark on his cheek.  He testified that he helped with the composite drawing and with the photographic array.  He stated that he used a photograph "from the past" that the police had of Petitioner in assembling the array.

Petitioner presented an alibi defense.  Corey Walton testified that he and Petitioner went shopping for car paint and parts on the day of the shooting.  Walton picked up Petitioner at 10:30 or 11:00 a.m. and they went to West Michigan Auto Store to purchase car rims.  Then they went to McDonald's and purchased food to take with them.  They then went to General Top and Trim, the Old Town Collision Shop, and Deluxe.  Walton then took Petitioner home so that he could get ready for work.  Walton arrived at work shortly before 3:00 p.m.  Walton learned about the shooting and Petitioner being a suspect when a man named Rodney Williams came by and showed him a

4

newspaper article.  Walton claimed that Officer Ruth called him while Williams was there and that Walton put the detective on hold to converse with Williams.

David Murday, an employee at the West Michigan Auto Repair, testified that he sold some rims to Corey Walton who came in every Thursday to make payments on them.  He recalled that Walton first came into the shop in March accompanied by a black male, but he could not identify that person.  Jan Kiney from General Top and Trim testified that he could not recall March 7, 2000 and did not remember Walton or Petitioner.  Floyd Young of Old Town Collision recognized Walton and his car and recalled that Walton and another black male came into the shop to inquire about a paint job.  He thought Petitioner looked familiar.  Dan Huyck from Deluxe Auto Parts remembered that Walton and Petitioner had come into the shop to look at paint, but he could not remember the date of their visit.

Petitioner also testified on his own behalf, claiming that he and Corey Walton were shopping for car paint and parts and having lunch at the time of the shooting.  He also stated that the photograph of him taken after his arrest showed that he had a moustache, goatee, and sideburns.  He denied committing the shooting.

At the close of trial, the jury found Petitioner guilty of two counts of assault with intent to commit murder, assault with intent to do great bodily harm less than murder, and possession of a firearm during the commission of a felony.  The trial court subsequently sentenced him to concurrent terms of 20 to 40 years imprisonment on the assault with intent to murder convictions, a concurrent term of 7 to 15 years imprisonment on the assault with intent to do great bodily harm conviction, and a consecutive terms of two years imprisonment on the firearm conviction.

5

Following sentencing, Petitioner filed an appeal as of right with the Michigan Court of Appeals raising the same claims contained in the current petition. The Michigan Court of Appeals affirmed Petitioner's convictions in a *per curiam* decision. *People v. Thomas*, No. 232285, 2002 WL 31450535 (Mich. Ct. App. Nov. 1, 2002) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Supreme Court, which was denied. *People v. Thomas*, 468 Mich. 926, 664 N.W.2d 214 (2003).

Petitioner thereafter filed the present habeas petition asserting that: (1) the prosecutor denied him due process by failing to disclose police reports of witness interviews and by failing to timely investigate his alibi, (2) the photographic array was unduly suggestive and denied him due process of law and counsel was ineffective for failing to object, (3) he was denied a fair trial by the introduction of a witness's prior statement, (4) he was denied a fair trial by police testimony that his photograph was on file and counsel was ineffective for failing to object, and (5) he was denied a fair trial by the prosecutor's argument that an alibi witness was referring to notes when he spoke to an investigating police officer. Respondent has filed an answer to the petition contending that the claims should be denied for lack of merit and/or based upon procedural default.

## III.   Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq*., govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody

6

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the

7

state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, this Court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.    Analysis

### A.    Disclosure of Evidence and Investigation of Alibi Witnesses

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to disclose police notes of interviews with alibi witnesses before trial and failed to timely investigate the alibi witnesses. Respondent contends that these claims lack merit.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The United States Supreme Court has held that the prosecutor's failure to disclose

8

evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  In other words, to find a *Brady* violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).  Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995).  The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993).

A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior nondisclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986); *see also Edkin v. Travis*, 969 F. Supp. 139, 143 (W.D.N.Y. 1997) (*Brady* violation did not occur when defense counsel ultimately received the materials and had an opportunity to prepare for cross-examination).

The Michigan Court of Appeals denied relief on this claim, finding that the information obtained through the interviews was not exculpatory or favorable to the defense because the alleged alibi witnesses either failed to identify Petitioner or could not place him in their respective stores at the time of the incident. *Thomas*, 2002 WL 31450535, at *1.  The court further noted that the

9

trial court ordered the prosecution to disclose the police officer's notes to the defense. *Id.* at n.1. Additionally, the court found that due process did not require the police to seek and find allegedly exculpatory evidence for the defense. *Id.*

The Michigan Court of Appeals' determination is neither contrary to United States Supreme Court precedent nor an unreasonable application of the law or the facts. The police reports of the witness interviews were ordered to be disclosed during trial, and Petitioner has not established that such evidence constituted an unfair surprise or that he was prejudiced in presenting a defense by the delay in disclosure. To be sure, the defense was aware of the alibi witnesses and had an opportunity to interview those witnesses prior to trial. While the witness statements in the police notes were relevant, they were not particularly favorable to the defense. Thus, *Brady* was not violated as to that evidence.

Further, Petitioner has cited no clearly established law which requires that the police or prosecution were under a constitutional obligation to investigate the alleged alibi witnesses. *See generally Ridder v. City of Springfield*, 108 F.3d 1377, 1997 WL 117024, at *2 (6th Cir. 1997) (dismissing civil rights claim where plaintiff failed to demonstrate what clearly established law created a duty for a police officer to conduct an alibi investigation in a particular manner). In fact, case law holds that once the police have sufficient probable cause to arrest, they need not investigate further. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 308 (6th Cir. 2005) (citing cases). Accordingly, this Court cannot conclude that the conduct of the prosecution or the police deprived Petitioner of a fundamentally fair trial. Petitioner is not entitled to habeas relief on this claim.

10

**B.     Prosecutorial Misconduct**

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by arguing that an alibi witness referred to notes of a conversation with Petitioner while speaking to an investigating police officer on the telephone.  Respondent contends that this claim lacks merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id.* at 452.  Upon a finding of impropriety, the court must decide whether the statements were flagrant.  *Id.*  Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.  *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)).  "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent

11

that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor was entitled to argue that the witness was unworthy of belief and that the prosecutor's argument was a reasonable inference from the evidence.  *See Thomas*, 2002 WL 31450535, at *4.

Having reviewed the record, this Court finds that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  The prosecutor's argument was based upon a reasonable inference from the evidence, namely the testimony of the investigating police officer concerning his conversation with the alibi witness. Such a comment was proper.  *See Byrd v. Collins*, 209 F.3d 486, 535-36 (6th Cir. 2000).  Moreover, given the identification evidence presented at trial, it cannot be said that the disputed comment rendered Petitioner's trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### C.    Procedural Default of Remaining Claims

Respondent contends that Petitioner's remaining claims concerning the photographic array, the prior statement of a witness, and the reference to his photograph from the past are barred by procedural default because Petitioner failed to properly object to the alleged improprieties at trial.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  The United States Supreme Court has explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default.  *See Wainwright v. Sykes*, 433 U.S. 72, 85 (1977).

In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default or, alternatively, chose to waive the procedural bar.  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing Petitioner's claims, the court relied upon a state procedural bar -- Petitioner's failure to object to the challenged conduct at the time of trial.  *See Thomas*, 2002 WL 31450535, at *2-3.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review alleged trial court errors.  *See, e.g.*, *People v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994) (failure to object to prosecutorial misconduct); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991) (the failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review alleged trial errors).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239,

244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court

fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See*

*McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). In this case, the Michigan Court of

Appeals denied these claims based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to

federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting

from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See*

*Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner

contends that trial counsel was ineffective for failing to make appropriate objections at trial. Even

assuming that Petitioner could show that counsel erred in some way, however, he cannot establish

prejudice to excuse his default or to establish that counsel was ineffective under *Strickland v.*

*Washington*, 466 U.S. 668 (1984), as his underlying claims lack merit. *See* discussion *infra*.

Lastly, Petitioner has not established that a miscarriage of justice has occurred. The

miscarriage of justice exception requires a showing that a constitutional violation probably resulted

in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United*

*States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner

to support his allegations of constitutional error with new reliable evidence -- whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --

that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing.

These claims are thus barred by procedural default, otherwise lack merit, and do not warrant habeas

14

relief.

**D.      Merits of Defaulted Claims**

1.      Photographic Line-Up

Petitioner asserts that he is entitled to habeas relief because the photographic array shown to the eyewitnesses was unduly suggestive.  A conviction based on identification testimony following pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).  An in-court identification by a witness to whom the accused was exhibited before trial in an unduly suggestive manner must be excluded unless it can be established that the identification has an independent origin which is not tainted by the suggestive pre-trial identification procedures.  *See Wade v. United States*, 388 U.S. 218, 241 (1967).

A two-step analysis applies to decisions concerning the admissibility of identification evidence.  First, a court must determine whether the identification procedure was impermissibly suggestive.  Second, if the court finds that the identification procedure was impermissibly suggestive, the court must determine whether, under the totality of the circumstance, the testimony was nevertheless reliable.  *United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).  "If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred."  *Id.*

The United States Supreme Court has declared that "reliability is the linchpin in

15

determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  In *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), the Supreme Court listed five factors that should be considered when evaluating reliability:  (1) the witness's opportunity to view the perpetrator during the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation.  "The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification.  *See Manson*, 432 U.S. at 113-14; *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).

In this case, the Michigan Court of Appeals ruled that the photographic lineups were not impermissibly suggestive and that the witnesses' identifications were nonetheless sufficiently reliable to satisfy due process.  *See Thomas*, 2002 WL 31450535, at *2.

Having reviewed the record, this Court concludes that the Michigan Court of Appeals' determination in this regard is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts in light of the evidence.  First, the photographic lineup shown to the witnesses was not unduly suggestive.  The array contained six photographs of similar size and the individuals depicted in those photographs generally fit the description of the shooter and bore some resemblance to Petitioner.  Petitioner has not shown that the physical dissimilarities were so significant as to invalidate the photographic array.

16

Further, even assuming that the photographic array was impermissibly suggestive, the witnesses in-court identifications of Petitioner were reliable.  The three witnesses, Russell McClendon, Todd Jones, and Janice Pritchett, had an opportunity to see the shooter on the afternoon of the shooting.  There was no evidence that their physical or emotional states impeded their ability to observe the shooter, who they described as a light-skinned black male who was clean shaven with braided hair.  Two of the witnesses testified that they knew Petitioner.  McClendon testified that he and Petitioner had been "pretty good friends" in school and Jones testified that he recognized Petitioner from the neighborhood.  Both McClendon and Jones identified Petitioner as the shooter when shown the photographic array a few days after the shooting.  Although Pritchett was shown Petitioner's photograph several months later just before trial, she testified that she had seen Petitioner in the courtroom before being shown his photograph and that she immediately recognized him as the shooter.  Significantly, none of the witnesses expressed any doubt about their identifications of Petitioner when testifying at trial.  They also stated that their identifications were based upon their recollections of the shooting.  Considering the totality of the circumstances, this Court concludes that the in-court identifications were sufficiently reliable and independent of the photographs such that Petitioner's due process rights were not violated by the admission of the identification testimony.  Habeas relief is therefore not warranted on this claim.

### 2.   Prior Statement of Witness

Petitioner also asserts that he is entitled to habeas relief because the trial court admitted witness Frank Gaskew's prior statement to police identifying Petitioner as the shooter without a proper foundation.  Petitioner asserts that such testimony constituted inadmissible hearsay.

It is well-established that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

The Michigan Court of Appeals found no plain error in the trial court's admission of the police testimony regarding Frank Gaskew's identification of Petitioner as the shooter under Michigan Rule of Evidence 801(d)(1).  *See Thomas*, 2002 WL 31450535, at *3.  This Court concludes that the Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law.  The state court reasonably determined that the disputed testimony was properly admitted as a prior identification under the Michigan Rules of Evidence.  State courts are the final arbiters of state law and federal courts will not address perceived errors of state law on habeas review.  *See, e.g., Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Moreover, Petitioner's confrontation rights were not violated by the admission of Frank Gaskew's prior statement given that the declarant, Gaskew, testified at trial and was subject to cross-examination by defense counsel.  *See United States v. Owens*, 484 U.S. 554, 560 (1988) ("We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination.").  Petitioner has thus not shown that the testimony identifying him as the shooter was improperly admitted under state law or that its admission rendered his trial

18

fundamentally unfair.  Habeas relief is not warranted on this claim.

3.    Photograph from the Past Reference

Lastly, Petitioner asserts that he is entitled to habeas relief because a testifying police officer indicated that he conducted the photographic array with a photograph of Petitioner "from the past." Petitioner claims that this comment was an improper reference to his criminal record.

As noted, alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68; *Serra*, 4 F.3d at 1354.  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *Bugh*, 329 F.3d at 512; *Clemmons*, 34 F.3d at 356.  The United States Supreme Court has declined to hold that "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[2]  Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh*, 329 F.3d at 512.  Consequently, there is no Supreme Court precedent that the state court decision could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1).  *Id.* at 513; *see also Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003).  Petitioner's claim must fail.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to relief.  The Michigan Court of Appeals determined that reversal was not warranted because the police officer's

---

[2]While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

comment was brief, vague, not inherently prejudicial, and not deliberately injected into the proceedings. *Thomas*, 2002 WL 31450535, at *3. This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The comment was brief and unsolicited by the prosecution. More importantly, it was not an explicit reference to a mug shot or Petitioner's criminal history. The prosecutor did not dwell on the comment or further discuss the source of the photograph. Moreover, given the identification evidence presented at trial, it cannot be said that the disputed comment rendered Petitioner's trial fundamentally unfair. Habeas relief is not warranted on this claim.

## V.    Conclusion

For the reasons stated, this Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition.

**ACCORDINGLY, IT IS ORDERED** that the petition for writ of habeas corpus [docket entry 3] is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that, if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA with this Court within **TWENTY-ONE (21) DAYS** of filing a notice of appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) ("**We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA.**" (emphasis added)). Respondent may file a response with an appropriate brief,

both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of

Petitioner's motion for a COA.


Dated:  November 2, 2005                          s/Paul V. Gadola
                                                  HONORABLE PAUL V. GADOLA
                                                  UNITED STATES DISTRICT JUDGE


<div style="border:1px solid">

Certificate of Service

I hereby certify that on  November 2, 2005  , I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system which will send notification of such filing
to the following:
                              Janet Van Cleve                          , and I
hereby certify that I have mailed by United States Postal Service the paper to the
following non-ECF participants:            Dedrick Thomas                       .


                                 s/Ruth A. Brissaud
                                 Ruth A. Brissaud, Case Manager
                                 (810) 341-7845

</div>